# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAIGE BARNARD,** | : | **Civil No. 3:18-CV-01218** |
| | : | |
| **Plaintiff,** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **LIBERTY MUTUAL** | : | |
| **INSURANCE CORP., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION AND ORDER

### I.      Statement of Facts and of the Case

This case arises out of an automobile accident involving the plaintiff, Paige
Barnard, in December 2015. At the time of the accident, Barnard was insured by the
defendant, Liberty Mutual, under her parents' auto insurance policy. Pursuant to that
policy, Barnard received first party medical benefits and income loss benefits after
the accident. Subsequently, in December 2016, Liberty Mutual sent Barnard a letter
notifying her that her benefits were being terminated as of February 11, 2016. This
decision was made after Liberty Mutual sent Barnard's case to a peer review
organization ("PRO"), which determined that Barnard's treatment was no longer
appropriate, necessary, or reasonable.

After her request for reconsideration of the PRO's decision was denied, Barnard filed this suit in state court, and Liberty Mutual subsequently removed the case to federal court. After the parties engaged in initial discovery, disputes arose with respect to the plaintiff's request for production of documents, answers to interrogatories, and the sufficiency of Liberty Mutual's privilege log as it pertained to a number of redactions in the documents produced by the defendant. The court held a telephone conference to discuss these issues, and the parties were directed to brief their respective positions. Liberty Mutual was also directed to produce its documents alleged to contain privileged information to the court for *in camera* inspection.

For her part, Barnard contends that she is entitled to all the documents she requested and to answers to her interrogatories. With respect to the claim file, Barnard argues that any responsive documents existing prior to March 14, 2017, were not prepared in anticipation of litigation, and thus there would be no privilege and no basis for redacting the information. She also contends that she is entitled to the entirety of the claim file, including the information related to her underinsured motorist ("UIM") claim, which was settled prior to the instant lawsuit.

Liberty Mutual objects to several of Barnard's requests for production of documents, as well as to several of Barnard's interrogatories, claiming the information is either privileged or not relevant to the instant matter. Additionally,

with respect to the redacted documents, Liberty Mutual asserts that the redacted information in the claim file is covered by the attorney-client and/or work product privileges, and that any documents created after February 6, 2017, were prepared in anticipation of litigation. Liberty Mutual also claims that any other information redacted is outside the scope of Federal Rule of Civil Procedure 26.

## II.    Discussion

Issues relating to the proper scope and nature of discovery rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding the conduct of discovery, therefore, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter ..., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D. Pa. 1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a

magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

Liberty Mutual objects to many of the plaintiff's discovery requests, arguing that the information requested is protected by the attorney-client and/or work product privileges, contains confidential trade secrets and proprietary information, is overly broad or burdensome, and is not relevant. Additionally, because these disputes arose while a motion to dismiss was pending in this case, Liberty Mutual argues that some of the information requested—pertaining to the plaintiff's bad faith claim—was premature pending the outcome of that motion.

At the outset, we note that the plaintiff's statutory bad faith claim was dismissed without prejudice on December 12, 2018. (Doc. 49). However, the plaintiff filed an Amended Complaint on December 28, 2018, which includes an amended statutory bad faith claim. (Doc. 51). Thus, any argument regarding the premature nature of bad faith discovery is now moot. We will address the defendant's remaining arguments in turn.

### A. Plaintiff's Request for Production of Documents

The plaintiff requested that Liberty Mutual produce the following: (1) a copy of the peer review section of Liberty Mutual's policy manual, including updates, notices, bulletins, and communications regarding such policy; (2) all communications of any nature regarding the matters in the plaintiff's complaint and

those raised in initial disclosures; (3) the entirety of Liberty Mutual's claim files related to Barnard, including logs and notes; (4) copies of the policies and procedures from 2015-2017 that govern the way Liberty Mutual's employees handle inquiries; and (5) all employment files of Aimee Johnson.[1] Barnard concedes that the employment file of Aimee Johnson is not discoverable at this stage, but argues that the other requests must be produced in order for her to make a determination whether to seek Ms. Johnson's employment file in the future. (Doc. 50, at 13).

For its part, Liberty Mutual objects to the plaintiff's requests on the bases of the attorney-client privilege or work product, relevance, and maintains that the requests are overbroad, unduly burdensome, and vague. With respect to the plaintiff's request for the claim file, the defendant submitted redacted and unredacted versions of the file, along with its privilege log, to the court for *in camera* review so that we can determine whether the information is being withheld appropriately. Additionally, Liberty Mutual supplemented its answer to the request for communications with six pages of communications. (Doc. 47, Def. Ex. 4, Bates 3223-3228).

First, with respect to any peer review portion of Liberty Mutual's policy manual and the employee policy or procedures for handling inquiries, it is our view

---

[1] The plaintiff originally requested a copy of the Shareholders' Rights policy but has since rescinded that request after her motion for remand was denied. (Doc. 50, at 12).

that this information must be produced. The plaintiff alleges that Liberty Mutual specifically selected a biased PRO to review her claim so that it could cut off her benefits. Thus, how Liberty Mutual handles its peer review process is directly relevant to the plaintiff's bad faith claim and her claim under § 1797 of the Motor Vehicle Financial Responsibility Law ("MVFRL") for abuse of the review process. Similarly, the policy or procedures that govern the way Liberty Mutual's employees handle inquiries about insurance policies is also relevant to the bad faith claim. See Consugar v. Nationwide Ins. Co. of America, 2011 WL 2360208, at *6 (M.D. Pa. June 9, 2011) (Munley, J.) (finding that Nationwide's policy manuals "would allow plaintiff to compare defendant's standards for evaluating claims with the conduct of defendant's agents in this matter. A failure to follow established policy could make it more likely that defendant acted in bad faith in denying plaintiff's [] claim"); see also Robertson v. Allstate Ins. Co., 1999 WL 179754, at *6 (E.D. Pa. March 10, 1999) (holding that information regarding a departure from established procedures "is probative evidence for plaintiff to demonstrate bad faith") (internal quotations and citations omitted). Therefore, we will overrule the defendant's objections and order the defendant to produce both the peer review section of Liberty Mutual's manual, if one exists, and the policies and procedures governing the way Liberty Mutual's employees handle inquiries. To the extent that these policies or manuals contain confidential trade secrets or proprietary information, the plaintiff is directed

to keep these materials confidential. See Adams v. Allstate Ins. Co., 189 F.R.D. 331, 333 (E.D. Pa. 1999) (permitting the discovery of claims manuals and company policy and ordering the plaintiff to keep such materials confidential).

Regarding the plaintiff's request for "all communications of any nature whatsoever" regarding matters in her complaint and raised in initial disclosures, we agree with the defendant that this request is too vague and overbroad. The plaintiff's request for communications regarding "any matters raised by Plaintiff's and Defendants' Initial Disclosures" is particularly vague, as the plaintiff does not reveal what matters were raised by the disclosures. Thus, the defendant has no way of knowing what communications to produce. See Lofton v. Wetzel, 2015 WL 5761918, at *2 (M.D. Pa. Sept. 29, 2015) (Conner, C.J.) (finding that document requests for "all incident reports" from the prison and "any and all records" of inspection was overbroad and vague). In its current form, the plaintiff's request is overly broad and vague as to the communications she seeks, and thus the defendant will not be required to produce documents related to that request.

Finally, the plaintiff's request for the entirety of the claim file is intertwined with the *in camera* review undertaken by the court to determine whether the documents contain privileged information. Among these documents are claim notes, financial information, and claim status reports. Liberty Mutual has redacted a significant amount of information from this file based on the attorney-client

privilege and as work product, reserve information, and the contention that the information is outside the scope of Rule 26. Additionally, Liberty Mutual contends that any information regarding Barnard's UIM claim that is redacted is not relevant to her claim for first party medical benefits.

With respect to the privileges asserted by Liberty Mutual,[2] the work-product doctrine is governed by a uniform federal standard that is set forth in Rule 26(b)(3) of the Federal Rules of Civil Procedure. United Coal v. Powell Constr. Co., 839 F.2d 958, 966 (3d Cir. 1988). The doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 661-62 (3d Cir. 2003). As the Third Circuit has explained:

> The purpose of the work-product doctrine differs from that of the attorney-client privilege . . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly the functioning of our legal system, by protecting the confidentiality of communications between

---

[2] Liberty Mutual continuously asserts the attorney-client privilege, which is codified at 42 Pa. Cons. Stat. Ann. § 5928 and protects communications between an attorney and his or her client. While the defendant asserts this privilege, Liberty Mutual has not identified that any of the documents from which it has redacted information contained information or communications to its attorney. The information that has been redacted is information that has been prepared by its employees or claims adjusters, whose work may be subject to protection as work product but would not appear to qualify as attorney-client privileged. Liberty Mutual has not so much as identified the name of an attorney from which we could deduce that any redacted information was protected under this privilege. Thus, we do not find it necessary to discuss the attorney-client privilege here, where no documents fall under its purview.

clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used again their clients.

Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1427-28

(3d Cir. 1991). Furthermore,

> The doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

United States v. Nobles, 422 U.S. 225, 238-39 (1975) (footnote omitted).

With these animating principles, Rule 26(b)(3) shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A). Further, as it pertains to an insurer's claim files, courts in this circuit have held that "[a]n insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate, and make a decision with respect to claims made on it by is insureds." Lyvan D.D.S. v. Harleysville Ins. Co., et al., 1994 WL 533907 (E.D. Pa. Sept. 29,

1994); <u>see also</u> <u>Shaffer v. State Farm Mut. Auto. Ins. Co.</u>, 2014 WL 931101, at *2 (M.D. Pa. March 10, 2014).

### (1)    Anticipation of Litigation

Barnard contends that Liberty Mutual could not have reasonably anticipated litigation any earlier than March 14, 2017, when the plaintiff was denied an extension of time to submit documents for her peer review reconsideration. (Doc. 55, at 3). On the other hand, Liberty Mutual contends that it reasonably anticipated litigation on February 6, 2017, when it received a letter from plaintiff's counsel that voiced the plaintiff's disagreement with the PRO outcome, the failure to pay wages and benefits, and ultimately requested reconsideration. (Doc. 54, at 3). After considering the parties' respective positions, in our view it was reasonable for Liberty Mutual to anticipate litigation on February 6, 2017.

The letter stated that the plaintiff was dissatisfied with the outcome of the peer review, and that she believed she should still be receiving payments for her medical bills and wages pending her reconsideration of the peer review decision. (Doc. 55, at 6). Further, as the plaintiff points out in her brief, Barnard "was free to commence litigation without cooperating with her Insurer's request to submit her argument for reconsideration," as exhaustion of the peer review procedures is not a prerequisite to filing a lawsuit. (<u>Id.</u>, at 2). Additionally, as we have stated, "[i]t is not necessary that litigation has been commenced or even threatened before a document can be

found to have been prepared in anticipation of litigation." Craig v. Rite Aid Corp.,
2012 WL 426275, at *6 (M.D. Pa. Feb. 9, 2012). Thus, Liberty Mutual could have
reasonably anticipated that Barnard would file suit once they received notice of her
dissatisfaction with the outcome of the peer review process on February 6, 2017.

### (2) Claim Status Reports

First, with respect to the claim status reports (Bates 00140-00178), in our view
these documents have been inappropriately redacted. Liberty Mutual's privilege log
indicates that items in this log are redacted on the bases of mental impressions,
conclusions, reserves, opinions respecting value or merit of claim or defense, or legal
theories, strategy or tactics; post-litigation analyses; and/or the information is
outside the scope of Rule 26. However, following a review of the claim logs, we
conclude that the documents are simply logs that indicate when certain employees
"viewed" the plaintiff's claim file. Any entry that includes a description does not
contain any mental impressions, conclusions, opinions, or strategies of the viewer
regarding the plaintiff's claim, but rather updates the status of the file with factual
sentences, such as "Check status changed from Requested to Issued," or "Uploaded
Manual Inbound E-Mail document." See Natale v. Wal-Mart Stores, Inc., 2016 WL
3467715, at *2 (M.D. Pa. June 24, 2016) (Saporito, M.J.) (directing that redactions
containing only "a factual recitation" entered by the claims adjuster who made the
entry be produced unredacted). Additionally, and curiously, some of these

descriptions are mentioned more than once, but are redacted on some pages of the log and not on others. Thus, because we find that the redactions are not protected as mental impressions, conclusions, opinions or trial strategies, we will direct the defendant to produce these documents, Bates 00140-00178, unredacted.

### (3)    Financial Documents

With respect to the financial documents that have been submitted to the court (Bates 00098-00139), we find that these documents have been appropriately redacted. Liberty Mutual redacts the information in these documents on the bases of mental impressions, conclusions, reserves, and opinions respecting the value or merit of claim or defense.

An insurance reserve is money set aside "to satisfy obligations that may arise under a claim," Peco Energy Co. v. Insurance. Co. of N. America, 852 A.2d 1230, 1232 n. 3 (Pa. Super. Ct. 2004), and Pennsylvania requires insurance companies to set reserves aside when they are placed on notice of possible losses arising under their policies. See Keefer v. Erie Ins. Exchange, 2014 WL 201123, at *3 (M.D. Pa. March 7, 2014) (Rambo, J.) (quoting Fidelity & Deposit Co. of Md. V. McCulloch, 168 F.R.D. 516, 525 (E.D. Pa. 1996)). Courts in this circuit are split on the question of whether reserves are discoverable in bad faith cases. Consugar v. Nationwide Ins. Co., 2011 WL 2360208, at *5 (M.D. Pa. June 9, 2011) (Munley, J.) (collecting cases and discussing the split in authority).

The prevailing view indicates that reserves may be discoverable in a bad faith action when the claim relates to the insurer's failure to settle or where there is a discrepancy regarding the value of the claim. See e.g., Borgia v. State Farm Mut. Auto. Ins. Co., 2014 WL 4375643, at *4 n.5 (E.D. Pa. Sept. 3, 2014) (finding the reserves were relevant to the plaintiff's UIM claim because "the establishment of reserves would serve little, if any, purpose unless the reserves 'have some relationship to the insurer's estimation of the insured's potential liability'") (citations omitted); Consugar, 2011 WL 2360208, at *5 ("the amount set aside for reserves 'is certainly germane to any analysis [defendant] made of' the claim's value, and of whether defendant acted in bad faith in processing the claim") (citations omitted); Oak Lane Printing & Letter Serv., Inc. v. Atlantic Mut. Ins. Co., 2007 WL 1725201, at * (E.D. Pa. June 13, 2007) (stating that reserves "must be relevant to a specific issue presented in a bad faith action," such as when "the insurer fails to settle or where there is a disputed issue regarding the value of the claim").

However, when the bad faith claim is based on a denial of coverage and "does not involve the value of the claim or [the plaintiff's] estimation of liability . . . the reserve information requested is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." Executive Risk Indem., Inc. v. Cigna Corp., 2006 WL 2439733, at *5 & n.7 (C.C.P. Phila. Cnty. 2006) (citing McCulloch, 168 F.R.D. 516 (E.D. Pa. 1996) and Safeguard Lighting Systems, Inc. v. N. American

Specialty Ins. Co., 2004 WL 3037947 (E.D. Pa. Dec. 30, 2004)); see also Mine Safety Appliances Co. v. N. River Ins. Co., 2012 WL 12930306, at *3 (W.D. Pa. March 14, 2012) (discussing Executive Risk and holding that reserves were not discoverable in a case where coverage under the policy was at issue).

The issue in this case is Liberty Mutual's denial of first party benefit coverage under the insurance policy, which Barnard contends was done in bad faith. However, Barnard's claim focuses on the denial of coverage based on a biased and unfair review process rather than the value of her claim. Thus, we agree that, in such a case, discovery of the insurer's reserve information would not be relevant to the bad faith claim. Accordingly, Liberty Mutual will not be required to produce unredacted versions of the financial documents, Bates 00098-00139.

### (4) Claim Notes

Finally, Liberty Mutual has produced 26 pages of claim notes, Bates 00045-00070, with a substantial amount of the information redacted. Liberty Mutual contends that the redacted information falls under the work-product doctrine because it was prepared in anticipation of litigation. Additionally, some of the redacted information related to Barnard's UIM claim, which Liberty Mutual contends is not relevant to the current breach of contract claim involving first party medical benefits.

On this score, after a review of the unredacted claim notes, we agree with the defendant that the entries containing the mental impressions and conclusions of the

claim employees created after February 6, 2017, have been appropriately redacted as work product, as they were prepared in anticipation of litigation. However, with respect to the entries related to the UIM claim created before February 6, 2017, we find that these documents have been inappropriately redacted. Contrary to the defendant's position, these entries may be relevant to the plaintiff's claim for first party benefits, as there seems to be overlap between the UIM entries and the first party benefit entries. See Robertson v. Allstate Ins. Co., 1999 WL 179754, at *6 (E.D. Pa. March 10, 1999) (permitting the discovery of the first party benefits file in a case for UIM benefits where information in one file "may indicate a difference in opinion or analysis between the first party claims adjuster and agents or employees involved in processing plaintiff's UIM claim").

In this case, as in Robertson, we find that the UIM files may contain information relevant to the plaintiff's first party benefits claim. Therefore, the defendants must produce the claim notes and UIM file unredacted, up to February 6, 2017, the date that they anticipated litigation.

## B. Plaintiff's Interrogatories

Liberty Mutual also objects to Barnard's interrogatories one through seven. The plaintiff's interrogatories can be summarily stated as follows: (1) the nature and amount of any employee incentive to close out insureds' claims; (2) the number of times Liberty Mutual used the PRO that analyzed the plaintiff's case, and the

outcome of those reviews; (3) the number of times Liberty Mutual used the same doctor in the peer review process that it used for the plaintiff's review and the outcome of those reviews; (4) the number of times Liberty Mutual used the PRO that performed reconsideration of the plaintiff's case for other reconsiderations, and the outcome of those reconsiderations; (5) the number of times Liberty Mutual used the same doctor in the peer review reconsideration process that it used for the plaintiff's reconsideration and the outcomes of those reconsiderations; (6) the title and duties of Dorothy Walczak from 2015-2017 and the nature of her involvement in the plaintiff's case; and (7) any involvement that The First Liberty Insurance Corporation had in the matters complained of in the plaintiff's complaint, identifying the name of the employee and the nature of his or her involvement.

The defendant's response to interrogatory seven identified the First Liberty Corporation as the issuer of the plaintiff's insurance policy and Aimee Johnson as the Claims Adjuster that handled Barnard's claim. The plaintiff has not requested any additional discovery regarding this interrogatory, other than to note that she may be requesting Ms. Johnson's employment file in the future. With respect to interrogatory six, the defendant provided a response, subject to its objections, that identified Dorothy Walczak as a contract employee who performed support tasks and clerical transmission of emails, and who transmitted claims files once suit was filed to the Legal Office of Liberty Mutual. While the plaintiff contends that the

information regarding Ms. Walczak is incomplete, Barnard does not request any specific additional information about Walczak's job duties. Additionally, we note that the plaintiff would be able to obtain the information she desires through other means of discovery, such as a deposition. See Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices, 319 F.R.D. 214, 219 (W.D. Pa. 2017) (denying the plaintiff's request for personnel files where the information the plaintiff sought "could likely be obtained through the depositions of those employees").

Liberty Mutual objects to interrogatory one on the basis that it is not relevant, is overly broad and vague, and contains confidential trade secrets. However, we find that interrogatory one must be answered by the defendant. The plaintiff seeks information related to any policy that implemented an incentive plan for employees of Liberty Mutual to close out claims. An employee incentive plan to close out insureds' claims is may have relevance to the plaintiff's bad faith claim, which she has now set forth in her second amended complaint, as it could reveal facts relevant to the motivations of the employees who handled Barnard's claim. See Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 185 (E.D. Pa. 2004) (holding that information regarding awards and financial bonus programs for employees were "relevant to show Defendants' state of mind as well as their relationship with the employees who handled Plaintiff's claims"). Thus, the defendant will be required to answer interrogatory one.

As for interrogatories two through five, Liberty Mutual contends that the information regarding other peer reviews is not relevant, contains confidential trade secrets, and is protected from disclosure by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and/or other statutory mandates. We agree that this information is not relevant to the plaintiff's claim.

In Kaufman v. Nationwide Mutual Insurance Co., 1997 WL 703175 (E.D. Pa. Nov. 12, 1997), the district court prohibited the plaintiff from discovering information regarding the number of cases assigned to the defendant's claims adjustors who had handled the plaintiff's claim. The plaintiff had alleged that her claim was improperly handled because the adjustors had too many claims and were overworked. The court held that the statistics sought by the plaintiff were not relevant to the plaintiff's assertion that her claim was handled improperly, stating, "[s]imply because a particular adjustor has a heavy caseload does not necessarily indicate that his or her decision to deny a claim is without basis." Id. at *2. The court also recognized the burden such discovery would impose on the defendant as compared to the marginal value this information would have at trial. Id.

We find the Kaufman court's analysis instructive. In the instant case, while the plaintiff is asserting that the PRO and the doctor who reviewed her claim were biased, the number of times that this PRO and/or doctor decided in favor of the insurer, whether on initial review or on reconsideration, will not necessarily speak

to any such bias. For example, the PRO could have decided in favor of the insurer 98 times out of 100, but those 98 claims may very well have been legitimately decided on their merits, which could not be known without an extensive *post hoc* evaluation of the merits of each claim. This is not something that we are prepared to allow the plaintiff to do, as courts in this circuit have held that "discovery of other insureds' claims in bad faith cases is generally improper, as such information is irrelevant." Zettle v. American National Property and Casualty Co., 2012 WL 2359962, at *1 (W.D. Pa. June 20, 2012); see also North River Ins. Co. v. Phila. Reinsurance Corp., 1992 WL 724967, at *2 (D.N.J. April 6, 1992) (denying a motion to compel discovery of other insureds' claims information because the information was "not relevant because it will not lead to admissible evidence"). Thus, the defendant will not be compelled to answer interrogatories two, three, four, or five.

## III.  Order

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED THAT:

1. In response to the plaintiff's request for production of documents, the defendants shall produce:

    a. The relevant portions of any Liberty Mutual policy or manual that describes or outlines the Peer Review process (Request no. 1);

b. The relevant portions of any Liberty Mutual policy or manual that governs the way in which Liberty Mutual employees handle inquiries from insured persons (Request no. 4);

c. Unredacted copies of the claim status reports, Bates 00140-00178, and unredacted copies of the claim notes, Bates 00045-00070, with the exception of entries created after February 6, 2017 that were prepared in anticipation of litigation. (Request no. 3).

2. The defendant shall not be required to produce documents in response to plaintiff's requests for "all communications" relating to her claim (Request no. 2), and for the employee file of Aimee Johnson. (Request no. 6).

3. In response to the plaintiff's request for interrogatories, the defendants must provide an answer to interrogatory one, regarding any policy of employee incentives to close claims.

4. The defendant is not required to answer interrogatories two through five, which relate to the outcomes of peer reviews of other insured persons.

5. The defendants shall produce the aforementioned documents and answer to interrogatory one on or before **February 28, 2019**.

So ordered this 6th day of February 2019.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
